ELLEN HAMILTON *v.* ANGUS ROSS.

A. left his residence in New Jersey, and went to the city of New York on the 4th
   June, 1846. On the 10th of June, 1846, a creditor of A. sued out an attachment, by
   virtue of which his property, real and personal, was attached. In January, 1848,
   the auditors under the attachment sold the house where A.'s family resided;
   and it was bought by B.; and in February following, B. brought ejectment. A.'s
   wife, or widow, if he was dead, filed a bill, stating grounds on which she believed
   he had met a violent death in New York; and claiming dower, and that B. could
   not dispossess her until he had assigned her dower; and obtained an injunction
   against the ejectment.

The answer stated facts upon which the defendant submitted that A. had absconded
   from his creditors, and that there was no sufficient ground on which to find that he
   was dead, seven years from his departure not having expired. The injunction was
   dissolved.

The bill, filed August 22, 1848, states that on or about June
4, 1846, the complainant's husband, Charles Hamilton, since de-
ceased, was, as she believes, seized in fee of a certain house and
lot in Perth Amboy. That on the said 4th of June, at about
5 A. M., the said Charles went to New York, carrying with him
certain furniture which had been made by him, he being a cabi-
net maker, with the intent, as he said, to sell the same there and
to return from there on that or the next day. That he car-
ried no baggage whatever, leaving all his clothes at home, except
what he wore, being the suit of clothes which he usually wore
when going about his ordinary business; and told the complain-
ant he was coming back as aforesaid; since which time she has
never seen him, nor heard from him by letter or otherwise, di-
rectly or indirectly, nor obtained any information respecting him,
except as hereinafter mentioned.

That when on the wharf, about starting for New York, one
George F. Trynor, a tailor residing in Perth Amboy, asked him,
as he was going to New York, to match a certain piece of cloth
which he then held in his hand and gave to him, in a certain
store in New York; which the said Hamilton agreed to do. That
the said Hamilton arrived in New York that day, and was seen

there that day by divers persons, who reported their having seen him to the complainant.   That he called at the said store in New York to which he had promised the said Trynor to go, and produced said piece of cloth, and endeavored to match it.   That, on the same day, he called on a person to whom he owed money and paid him, and conversed a short time with his foreman, in his store, and then started away, saying that he was going home to Amboy and that the boat started at a certain hour, being a short time therefrom, and went away in the direction of the said boat; and that, from that time to this, the complainant has heard nothing of him whatever, although she has made diligent search and inquiry for him everywhere, and in every manner she could devise.

That said Hamilton, as she is informed and believes, had in his possession when he went to New York as aforesaid about $300; and that the said furniture which he carried away was worth about $40.   That, on or about the 8th of said June, becoming alarmed by the long stay of her said husband, she went to New York and caused diligent search and inquiry, and made all in her own power; but without success.   And that she inserted an advertisement in the newspaper "Sun," which was continued therein for three days, advertising for information concerning him; but that all her efforts have been abortive; and that she at this time knows no more of his fate than she did at first.

That within a few days after said Hamilton's disappearance, and on or about the 10th of said June, John Manning, survivor of Manning & Reckless, of Amboy, made affidavit, before a Justice of the Peace, that he verily believed that said Hamilton had absconded from his creditors &c., and owed him a sum specified in said affidavit, being about $90; whereupon an attachment was issued against said Hamilton; and on the next day the Sheriff, by virtue thereof, attached all the property, real and personal, of said Hamilton, consisting of his household furniture and the homestead lot of said Hamilton, with the back lot adjoining and two other lots of land of considerable value.   That the complainant could not appear for her husband; and being thrown by his disappearance and, as she believes, death, upon her own re-

sources, she could not afford to employ counsel; and was therefore obliged to let the attachment go on, and regard it as merely void. That the said attachment did go on; and on the 8th of January, 1848, the auditors appointed therein sold the real estate of said Hamilton.

That the whole amount of debts due from said Hamilton, so far as the complainant knows, and so far as was produced against him, with interest to the date of the auditors' report, about Feb. 20, 1847, was only between $1500 and $1600, as the complainant is informed. That the property of said Hamilton, properly managed and fairly valued. was more than sufficient to pay his debts. That his house cost, as the complainant knows from the report of her said husband and vouchers, about $1,090, and was only two months old, or thereabouts, at the time he disappeared; and that the lot on which it stands cost him $500, about June 1845. That he owned another lot for which he gave $175, and two other lots for which he gave $125, seven or eight years before, and which were then worth more; and that his household furniture, fairly valued, was worth at least $500. That said Hamilton, at the time he disappeared, was in good credit, standing and repute for integrity and industry, perfectly regular in his habits and exemplary in his demeanor. That he was an affectionate and kind husband, and the father of four children, the eldest then ten years old, and the youngest two. That he was not, at the time of his disappearance, sued by any one or threatened with suit. That of the indebtedness afterwards proved against him, one amount, of $300, and another of $550, were secured by mortgages on his homestead, and no interest thereon was then payable; while of the balance of his indebtedness $250 was secured by a note yet having about three months to run; nor was there any danger of his being unable to pay it.

That the complainant believes and charges that her said husband is dead. That she is informed he was apt when in possession of money to exhibit it boastingly and imprudently, and that she believes and charges that, either by accident or design, said Hamilton, when in New York at the time aforesaid, died by violence; and that his death and body were concealed by those

who, finding a considerable sum of money upon him, found it their interest to do so.

That on the said 8th January, 1848, the said homestead of said Hamilton, in which the complainant with his family have dwelt since his disappearance, was sold by the said auditors to Argus Ross, (the defendant,) of New York, for $54, subject to said mortgages for $850 ; and a deed therefor was given *to him* ; and that the said Ross, on the 25th of February then following, caused a declaration in ejectment to be served on the complainant as tenant of said premises, returnable to the March term of the Middlesex Circuit. That the complainant caused her appearance to be entered to the said action, and entered into the consent rule ; and the said cause is now noticed for trial on the 2d Tuesday in Sept. 1848. That if her said husband is dead, as she verily believes and submits she has good reason to believe, she is entitled to dower in the said premises, and the plaintiff in said ejectment is not entitled to recover possession against her until such dower is assigned her; and moreover she insists that the said attachment and the sale under it are void if the said Hamilton was not in life at the time of the issuing of the attachment or if he died between the service of the writ and the judgment thereon ; and further that an attachment cannot lawfully issue when service of a summons can be legally effected ; which could have been done at the time of the service of the said attachment, the complainant and the family of said Hamilton then being resident in his said house, where, if he was then alive, a summons might have been served ; and therefore also, the complainant insists that the said attachment and all the proceedings thereon are void. But that she is advised by counsel that she will not be allowed to attack the validity of such attachment in a court of law, wherefore she is without remedy at law.

The bill prays that the complainant may be decreed to be entitled to her reasonable dower in the said premises; and that the same may be assigned to her under the order of this Court ; and that the defendant may in the mean time be enjoined from prosecuting his said ejectment until he shall assign to her her said reasonable dower.

The answer admits that Hamilton was seized of the homestead

and lots in the bill mentioned, and that on or about June 4, 1846, Hamilton went to New York, having in his possession about $300 in cash and about $40 worth of furniture, there to be sold; and was seen in New York by several persons; and since that day has not been heard of; and says the defendant does not know, nor has he been informed, except as is stated and conjectured in the bill, of the other circumstances in the bill alluded to in connection with Hamilton's leaving Amboy and going to and being in New York; but denies that such statements if true are sufficient to warrant the belief that he came to his death in New York by violence.

The answer admits the proceedings in the attachment stated in the bill, and the sale to the defendant subject to the mortgages; and says the defendant is informed that the mortgages were executed by the complainant as well as by Hamilton.

The defendant admits that he has brought ejectment and that the complainant caused her appearance to be entered to the action and entered into the consent rule; and that the cause was noticed for trial as is stated in the bill; and says that the trial was postponed by the Court, at the instance of the complainant, on her affidavit, as this defendant is informed and believes, of the absence of a witness alleged in said affidavit to be material. He submits that whatever equities the complainant may have had in the premises should have been asserted and enforced by her at the first opportunity; and that the neglect to do so amounts to a waiver thereof.

That he has been informed and believes that Hamilton's debts, as reported by the auditors, amounted to $1808,16, including the mortgages; and that the whole proceeds of the sale of his estate, real and personal, in the hands of the auditors, exclusive of costs and expenses, was sufficient to pay only a part of his debts, and as he believes, not more than one third.

He says he knows nothing of the credit or of the general outward conduct and demeanor of Hamilton; but that from what he has since heard of his conduct, and from facts and circumstances stated in the bill, he has good right to believe and insist, that at the time Hamilton left Amboy he left with the dishonest intention of absconding from his creditors.

He says he has been informed by John Couts, a respectable merchant of Amboy, and he believes it to be true, that about the time Hamilton left Amboy, either the same day or the evening be-fore, he borrowed of said Coults $250 or thereabouts. And the defendant says he has been further informed, and believes it to be true, that about the same time, or shortly before, Hamilton made out or procured to be made out bills against persons owing him ; and in one or more instances for the purpose of getting ready money, offered to receive half the amount due.

He denies that Hamilton is dead ; and submits that until positive and direct evidence to the contrary be adduced, and before the expiration of seven years from the time he was last seen or heard from, said Hamilton is to be deemed and considered to all intents and purposes, and especially in matters relating to the said real and personal property, as still living.

The cause was heard on the bill and answer.

*Blauvelt* moved to dissolve the injunction. He cited Saxton 196 ; Rev. Stat. 781.

*C. Parker* Contra.

THE CHANCELLOR. The injunction will be dissolved. The question whether Hamilton is dead, or is to be deemed under the circumstances to be dead, may be tried quite as properly, and perhaps much more satisfactorily in the ejectment suit. Acting on this ground in dissolving the injunction, I forbear making any remarks as to sufficiency or insufficiency of the facts stated in the bill to show that Hamilton is dead.

Injunction dissolved.